WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Edith Stanfield,<br><br>  Plaintiff,<br><br>v.<br><br>Lasalle Corrections West LLC,<br><br>  Defendant. | No. CV-21-01535-PHX-DJH<br><br>**ORDER** |

Pending before the Court is Plaintiff Edith Stanfield's Motion for Conditional Certification, for Approval and Distribution of Notice and for Disclosure of Contact Information (Doc. 22). Defendant Lasalle Corrections West LLC filed a Response in Opposition (Doc. 26), and Plaintiff filed a Reply (Doc. 27).

**I.    Background**

Plaintiff filed this action in September 2021, seeking damages, on behalf of herself and a group of similarly situated nurses, for alleged violations of the Fair Labor Standards Act ("FLSA"). (Doc. 1).

Defendant Lasalle Corrections West LLC is a foreign limited liability company registered to conduct business in the State of Arizona. (*Id.* at ¶ 6). Defendant operates two correctional facilities, San Luis Regional Detention Center ("San Luis Detention") in San Luis, Arizona and Prairieland Detention Center ("Prairieland Detention") in Alvarado, Texas. (Doc. 30 at ¶ 6). In January 2020, Plaintiff began work as an hourly paid nurse at San Luis Detention. (Doc. 1 at ¶ 14).

In April 2021, Defendant implemented a shift differential for hourly paid nurses at San Luis Detention; and in September 2021, Defendant enacted the same policy for Prairieland Detention. (Doc. 30 at ¶ 11). Under the shift differential, when an hourly paid nurse worked during certain shifts, such as evening or overnight shifts, she was entitled to a premium pay rate for those hours. (*Id.*)

Plaintiff alleges during the weeks where she and other nurses worked over forty hours, Defendant paid an improper overtime rate because Defendant determined the regular rate of pay based on the employees' hourly rate and failed to include the shift differentials. (Doc. 1 at ¶ 22). Plaintiff thus seeks conditional certification of a collective action to recover unpaid overtime compensation, liquidated damages, monetary damages, and prejudgment interest on behalf of herself and all other similarly situated nurses because of Defendant's failure to properly pay overtime compensation under the FLSA. (*Id.* at ¶ 2). Plaintiff also seeks reasonable attorneys' fees and costs on behalf of herself and all other similarly situated nurses. (*Id.*) Plaintiff alleges that Defendant failed to comply with the FLSA on those shifts where Plaintiff worked in excess of 40 hours per week because Defendant failed to include the shift differentials in the regular rate when calculating Plaintiff's and the other nurses' overtime pay. (*Id.* at ¶ 24.) Plaintiff alleges that Defendant's failure to pay overtime was willful, and that Defendant did not act in good faith. (*Id.* at ¶¶ 61; 63).

**II. Discussion**

Count One of Plaintiff's Complaint is based on Defendant's alleged violation of 29 U.S.C. § 206 and 207, and Plaintiff seeks relief under 29 U.S.C. § 216(b). (Doc. 1 at ¶¶ 56; 63).

**A. Conditional Certification**

Under the FLSA, a covered employer shall not employ any employee "for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). An employer who

violates § 207 "shall be liable to the employee or employees affected in the amount of their . . . unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

District courts within the Ninth Circuit "generally follow the two-tiered or two-step approach for making a collective action determination." *Shoults v. G4S Secure Sols. (USA) Inc.*, 2020 WL 8674000, at *1 (D. Ariz. July 31, 2020) (internal citation omitted). Under the first step, the court makes a notice stage determination of whether plaintiffs are "similarly situated." *Id.* (internal quotation and citation omitted). The burden rests on the plaintiff to establish she is similarly situated to the rest of the proposed class. *Id.* The standard, however, "requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* "Because of the minimal evidence available to the Court at the pleading stage, the initial determination to certify is based on a fairly lenient standard, and typically results in 'conditional certification' of a representative class." *Curphey v. F&S Mgmt. I LLC*, 2021 WL 487882, at *2 (D. Ariz. Feb. 10, 2021) (internal quotation and citation omitted). The court's determination at this first step is "based primarily on the pleadings and any affidavits submitted by the parties." *Kesley v. Ent. U.S.A. Inc.*, 67 F. Supp. 3d 1061, 1065 (D. Ariz. 2014) (internal citation omitted).

If a plaintiff establishes she is similarly situated to the proposed class, "the district court will conditionally certify the proposed class and the lawsuit will proceed to a period of notification, which will permit potential class members to opt-into the lawsuit." *Weeks v. Matrix Absence Mgmt. Inc.*, 494 F. Supp. 3d 653, 657 (D. Ariz. 2020). At the second step "the party opposing the certification may move to decertify the class once discovery is complete and the case is ready to be tried." *Id.* (internal quotation and citation omitted).

### B. Whether the Proposed Class Members are Similarly Situated

The issue before the Court is thus whether Plaintiff and the proposed opt-in plaintiffs are "similarly situated" within the meaning of § 216(b).

Plaintiff seeks to certify the following class: "All hourly-paid Nurses employed by

Lasalle Corrections West, LLC, who worked over 40 hours in any week in which they also received a nighttime shift differential since September 8, 2018." (Doc. 22-1 at 1). To establish that she is similarly situated to other potential plaintiffs, Plaintiff has submitted a declaration wherein she states that she and other similarly situated employees worked as nurses for Defendant, and that their main duty was "to provide medical care to inmates at Defendant's facilities." (Doc. 22-7 at ¶¶ 5, 8). She states that "Defendant[] utilizes an electronic time keeping system which all Nurses use to track their time . . . [and thus] Nurses like me are subject to Defendant's uniform employment policies and practices." (*Id.* at ¶ 7). She states that "[o]ther Nurses (including both LPN's and RN's) had the same or similar job duties as I did, which I know because I observed and collaborated with other Nurses in performing these job duties." (*Id.* at ¶ 8).

She further states that she "worked over 40 hours per week [and] believes other Nurses worked similar schedules . . . because [she] observed them working similar schedules . . . and because the schedules set by Defendant for Nurses required [them] to work over 40 hours at least every other week." (*Id.* at ¶ 9). Plaintiff states she earned an hourly rate and earned "additional pay when [she] worked the night shift." (*Id.* at ¶ 10). Plaintiff refers to this additional pay as the "nighttime shift differential." (*Id.*) She states that "[o]ther Nurses also earned the nighttime shift differential," which she knows because she "discussed pay with other Nurses." (*Id.*) Plaintiff recalls speaking to Cesar Vasquez, Howard Young, Michael Sullivan, Vargas, and Allison Patrick about their pay and the nighttime shift differential. (*Id.*)

Plaintiff states her "overtime rate was based [on] the regular hourly rate and did not include the nighttime shift differential" and that she "believe[s] other Nurses were paid the same way because [they] were all subject to the same payroll policies and practices." (*Id.* at ¶ 11). On or around December 1, 2021, after she filed her suit, Plaintiff states she received a check for "retroactive wages" from Defendant. (*Id.* at ¶ 12). The letter that accompanied the check indicated that "there may have been an inadvertent error in your pay calculations . . . We have audited your pay history and are sending you a check via

1   direct deposit to cover any adjustment which may be due." (*Id.*)  Defendant offered no
2   explanation of how the back wages were calculated. (*Id.*)

3         Plaintiff estimates that "there are at least fifty (50) other individuals who work or
4   have worked as Nurses for Defendant within the applicable time period . . . [and] believe[s]
5   at least some of these employees would be interested in joining this lawsuit." (*Id.* at ¶ 13).

6         In Response, Defendant argues Plaintiff has failed to satisfy her burden as to the
7   initial "notice stage" because the purported class members are not "similarly situated to
8   those whom [Plaintiff] seeks to represent." (Doc. 26 at 7).  Defendant contends Plaintiff's
9   declaration is "void of any facts to suggest" she has personal knowledge regarding the pay
10  practices of Defendant and that her allegation that Defendant uses "an electronic time
11  keeping system" does not provide proof that Defendant had a uniform policy of
12  miscalculating overtime wages. (*Id.* at 8).

13        The Court rejects Defendant's arguments.  First, in support of the conditional
14  certification, Plaintiff submits the factual allegations contained in her Complaint (Doc. 1)
15  and declaration (Doc. 22-7).  She alleges she "worked over 40 hours per week [and]
16  believes other Nurses worked similar schedules . . . because [she] observed them working
17  similar schedules . . . and because the schedules set by Defendant for Nurses required
18  [them] to work over 40 hours at least every other week." (*Id.* at ¶ 9).  This evidence is
19  sufficient to support a finding that the purported class identifies similarly situated
20  individuals. *See Shoults*, 2020 WL 8674000, at *2 ("[p]laintiffs' allegations need . . . only
21  show that there is some 'factual nexus which binds the named plaintiffs and the potential
22  class members together as victims of a particular alleged policy or practice.'"); *Weeks*, 494
23  F. Supp. 3d at 659 ("where [p]laintiffs have the same job duties, so too were they all subject
24  to the same 'decision, policy, or plan'").

25        Second, Plaintiff alleges she earned "additional pay when [she] worked the night
26  shift." (*Id.* at ¶ 10).  She states that "[o]ther Nurses also earned the nighttime shift
27  differential," which she knew because she "discussed pay with other Nurses," including
28  "Cesar Vasquez, Howard Young, Michael Sullivan, Vargas, and Allison Patrick . . . ." (*Id.*

at ¶ 10). This, too, is sufficient to show a policy of miscalculation of overtime wages. *See Daugherty v. Encana Oil & Gas, Inc.*, 838 F.Supp.2d 1127, 1133 (D. Colo. 2011) (internal citation omitted) ("[g]enerally, where putative class members are employed in similar positions, the allegation that defendants engaged in a pattern or practice of not paying overtime is sufficient to allege that plaintiffs were together the victims of a single decision, policy, or plan."); *Kesley*, 67 F. Supp. 3d at 2065 ("[t]o proceed to the notification stage of the litigation, [p]laintiffs' allegations need neither be 'strong [n]or conclusive.'").

Defendant further argues Plaintiff's proposed class should (1) be limited to "hourly paid nurses who worked at the San Luis Detention Center" and (2) "only those individuals who were employed by LaSalle Corrections West." (Doc. 26 at 10–13). Defendant says its wage determinations are based on each facility's intergovernmental agreements and thus the pay practices, including the issuance of any shift differential, are governed by that facility's federal contract. (*Id.* at 11). Thus, because the pay at San Luis Detention was governed by a specific contractual agreement unique to that facility, Defendant argues Plaintiff cannot establish she was similarly situated to hourly paid nurses who were not employees of San Luis Detention. (*Id.*)

Plaintiff does not respond to Defendant's second argument because Plaintiff says her class definition is limited to those employees who were or are employed by LaSalle Corrections West within the past 3 years. (Doc. 27 at 7). Thus, the parties seem to agree that the class definition is limited to only those employees of LaSalle Corrections West, and the Court will not address it.

As to the first argument, however, Plaintiff says Defendant's admission that it operates two locations and paid a nighttime shift differential at each location "should serve as the basis for certifying a class including Nurses at both of Defendant's locations." (Doc. 27 at 8).

Plaintiff must show that she and the prospective opt-in plaintiffs are similarly situated "with respect to their job requirements and with regard to their pay provisions." *Wood v. TriVita, Inc.*, 2009 WL 2046048, at *4 (D. Ariz. Jan. 22, 2009). Plaintiff satisfies

- 6 -

this burden with respect to the nurses at the San Luis Detention, and she similarly satisfies this burden as to the nurses at the Prairieland Detention. Indeed, Defendant acknowledged its implementation of the shift differential at each location, and the miscalculation of this shift differential is the basis for Plaintiff's proposed class.

Defendant cites *Kesley v. Ent. U.S.A. Inc.* to support its argument to limit the proposed class to only hourly paid nurses who worked at San Luis Detention. 67 F. Supp. at 1068. There, the court limited the class certification of employees to only some of defendant's locations because, in part, the "various corporate defendants [were] separate legal entities, rather than branches of a single defendant corporation." *Id.* at 1069. Here, Defendant operates two facilities, the San Luis Detention and Prairieland Detention. (Doc. 30 at ¶ 8). Defendant implemented the shift differential at both detentions. (*Id.* at ¶¶ 11; 12). Defendant does not contest that the facilities are owned by separate legal entities. Defendant says its wage determinations are based on each facility's intergovernmental agreements. (Doc. 26 at 11). But the intergovernmental agreements vis-à-vis its wage determinations are irrelevant because Defendant implemented the shift differential at both detentions.

Under the lenient standard applicable at this first step in the certification process, Plaintiff has made a sufficient showing that she and proposed opt-in plaintiffs are similarly situated because they had similar job duties and they were all subject to Defendant's overtime nighttime shift differential policy. Thus, for notice purposes, the Court will conditionally certify the collective action as Plaintiff has proposed.

**C. Approval of Notice**

Although the Court conditionally certifies a collective action for purposes of issuing notice, the Court does not approve Plaintiff's proposed notice (Doc. 22-1) and agrees with a handful of Defendant's objections to the notice form. (Doc. 26 at 13–18).

Defendant contests (1) the notice because it does not inform the putative class members of the costs or risk to which they may be exposed; (2) that the notice should include a judicial disclaimer; (3) that the notice should omit the "further information"

sections; (4) that the notice and consent form should not reference dates before April 2021 for San Luis Detention Nurses and September 2021 for Prairieland Detention Nurses; (5) that the 90-day opt-in period is excessive; (6) that the request for a reminder email is prejudicial; and (7) that the request to provide the names, last known mailing addresses, and last known work and personal email addresses of potential collective members in an "electronically manipulatable" format within seven days is overly burdensome. (Doc. 26 at 13–18).

First, the Court finds the notice need not include information about the opt-in's potential associated costs. *See Weeks*, 494 F. Supp. 3d at 660 (finding "the potential negative deterring effects of including information about associated costs outweigh the benefits."). This objection is thus rejected.

Second, Plaintiff's notice contains an explicit judicial disclaimer, stating "[t]he Court has not ruled on or decided any of the issues in this case, including the merits of the claims or defenses." (Doc. 22-1 at 2). Thus, the Court will not require Plaintiff to revise her notice form to include additional language. *See Adkinson v. Tiger Eye Pizza, LLC*, 2019 WL 5213957, at *8 (W.D. Ark. Oct. 16, 2019) (requiring plaintiffs to revise their notice form to include judicial disclaimer language because no such language existed in the form).

Third, the Court will direct Plaintiff to delete the three sections that advise potential plaintiffs that they may contact Plaintiff's counsel regarding updates on the case, filing deadlines, or questions about the lawsuit because potential plaintiffs could construe those sections as suggestions to call Plaintiff's counsel. (Doc. 22-1 at 2–3). *See Barrera v. US Airways Grp., Inc.*, 2013 WL 4654567, at *9 (D. Ariz. Aug. 30, 2013) (directing plaintiff to omit the "further information" section regarding deadlines for filing a consent to sue or questions about the lawsuit because it could be construed as encouragement for potential plaintiffs to call plaintiff's counsel).

Fourth, because Defendant's shift differential did not begin until April 1, 2021, for San Luis Detention, no opt-in plaintiff would be entitled to potential back wages before

this date. The same is true for the Prairieland employees as the shift differential did not begin until September 1, 2021. Plaintiff argues the change to its notice and consent forms is unnecessary because the proposed class definition is already limited to only those who received a shift differential. (Doc. 27 at 8). While true, the Court finds the current language could confuse potential plaintiffs that recovery dates back to September of 2018. Because back wages are not recoverable before April 2021 and September 2021, and to ensure maximum clarity to the potential opt-in plaintiffs, the Court will direct the notice and consent forms be changed to the respective shift differential implementation dates for each facility. Thus, the notice and consent forms should include specific language for nurses of Prairieland Detention clarifying that those claims only date back to September 1, 2021, and specific language for employees of San Luis Detention clarifying that those claims only date back to April 1, 2021.

Fifth, Plaintiff has not identified any compelling reason to extend the opt-in period to 90 days. Therefore, the Court finds a sixty (60) day opt-in period sufficient, which is the standard opt-in period for claims in this district. *See Weeks*, 494 F. Supp. 3d at 659 ("[r]egarding the notice period, this Court has approved opt-in periods of 60 days in FLSA collective actions.").

Sixth, the Court rejects Defendant's argument that a reminder email to putative class members thirty (30) days from the mailing of the original forms suggests judicial encouragement. *See Curphey v. F&S Mgmt. I LLC*, 2021 WL 487882, at *5 (D. Ariz. Feb. 10, 2021) (ordering a 60-day opt-in period and a reminder notice halfway through the opt-in period).

Seventh, Plaintiff requests Defendant to provide a list, in electronic importable format, within seven days of its Order of "the names, last known mailing addresses, email addresses (including personal and company-sponsored email addresses) and phone numbers . . . for anyone who meets the class definition." (Doc. 23 at 18). Defendant objects to this request. (Doc. 26 at 18). Because courts in this district have allowed fourteen days to produce such information, the Court will grant Plaintiff's request, but will

allow Defendant until July 28, 2022, to provide this information. *See Barrera v. US Airways Grp., Inc.*, 2013 WL 4654567, at *10 (D. Ariz. Aug. 30, 2013) (finding a five-day request to produce an electronic list of potential opt-ins burdensome and permitting fourteen days instead).

### III.   Conclusion

Given the liberal requirements for conditional certification under the FLSA, Plaintiff has set forth sufficient evidence to show the purported class members are "similarly situated." Further, consistent with the directed revisions above, the Court approves Plaintiff's Notice and Consent forms (Docs. 22-1, 22-2, 22-3, 22-4, 22-4).

Accordingly,

**IT IS HEREBY ORDERED granting** in part and **denying** in part, Plaintiff's Motion for Conditional Certification (Doc. 22), as set forth above.

**IT IS FURTHER ORDERED** that the collective class of potential plaintiffs is conditionally certified under 29 U.S.C. § 216(b) and shall consist of all hourly-paid Nurses employed by Lasalle Corrections West, LLC, who worked over 40 hours in any week in which they also received a nighttime shift differential since September 1, 2021, for hourly-paid Nurses of Prairieland Detention Center and April 1, 2021, for hourly-paid Nurses of San Luis Regional Detention Center.

**IT IS FINALLY ORDERED** that Plaintiff's Notice and Consent forms (Docs. 22-1, 22-2, 22-3, 22-4, 22-4) shall be written and sent in compliance with the directives in this Order.

Dated this 26th day of July, 2022.

Honorable Diane J. Humetewa
United States District Judge